213 So.2d 154 (1968)
Ethel B. CARTWRIGHT, Plaintiff-Appellant,
v.
FIREMEN'S INSURANCE COMPANY OF NEWARK, NEW JERSEY, Defendant-Appellee.
No. 2416.
Court of Appeal of Louisiana, Third Circuit.
July 29, 1968.
Rehearing Denied August 20, 1968.
*155 Francis E. Mire, Lake Charles, for plaintiff-appellant.
Stockwell, St. Dizier, Sievert & Viccellio, by Robert W. Clements, Lake Charles, for defendant-appellee.
Before TATE, FRUGE and SAVOY, JJ.
TATE, Judge.
The plaintiff Mrs. Cartwright was stopped at an intersection when a car driven by Dr. Kent struck her vehicle from the rear. Mrs. Cartwright sues Dr. Kent's liability insurer for damages. After trial, the District Court sustained the insurer's defense that the accident was unavoidable on Dr. Kent's part because his brakes suddently failed. Mrs. Cartwright appeals the dismissal of her suit.
Her chief contention on appeal is that the trial court erred to construe the evidence to show that Dr. Kent had no opportunity to apply his emergency (hand) brake following the failure of his foot brakes. Without detailed discussion, we will simply state that we find the heavy preponderance of the evidence supports the following findings:
The Cartwright automobile was stopped at a stop-sign inhibiting entrance into an intersection. As Dr. Kent approached it from the rear, he slowed to a 5-10 mile per hour coast. When about one and onehalf car-lengths behind, he applied his brakes more forcibly, it then being time to stop completely. Nothing happened; his foot just went to the floor. Within a second, he struck the Cartwright vehicle.
The investigating police officer found brake fluid in the vicinity of the car, and a stream of brake fluid leading to it starting from about ten feet behind the point of impact. He tested the brakes and found they had no braking power. A mechanic who repaired the vehicle found that the left front brake line had ruptured and had released all the fluid from the brake system.
The expert evidence is uncontradicted that the loss of brake fluid is virtually simultaneous with such a rupture, and that prior detection is very difficult of a latent defect in the brake line which will suddenly rupture after gradual stress over a period of time.
The evidence further shows that Dr. Kent had his automobile inspected every six months for defects, that he had brake repairs done about six weeks before the accident, and that he had no advance notice of the latent weakness of the brake line, nor could reasonable observation have given him any.
The legal principles applicable under present judicial interpretations of pertinent legislation are as follows:
A driver generally is not held to be responsible for latent defects in his vehicle, if he has exercised reasonable care in having the car inspected and as a reasonable man he had no prior notice of a defective condition. Delahoussaye v. State Farm Mutual Automobile Insurance Co., 202 So.2d 287 (La.App.4th Cir. 1967). However, for latent defects to constitute a valid defense, the proof must be exceptionally strong so as to satisfy certain jurisprudential requirements. Robinson v. American Home Assurance Co., 183 So.2d 77 (La.App.3d Cir. 1966) and decisions therein cited. Furthermore, the failure of a motorist to use his emergency brake constitutes negligence and a cause of the accident, if there is a reasonable opportunity to do so effectively after the ordinary foot *156 brakes fail. Robinson v. American Home Assurance Company, cited above, and decisions therein cited.
The trial court found (a) that Dr. Kent had made reasonable prior inspection of his vehicle, (b) that he could not reasonably be held to prior notice of the latent brake defect, and (c) that the foot brakes failed by reason of the sudden brake line rupture when Dr. Kent was so close to the forward Cartwright vehicle (d) that he could not reasonably have avoided the accident by the use of his emergency brake or any other means. These findings are all supported by substantial evidence.
Under these facts properly found, and under the legal principles applicable as above noted, we affirm the District Court judgment dismissing the plaintiff's suit. The plaintiff-appellant is to pay the costs of this appeal.
Affirmed.
TATE, J., also assigns concurring reasons.
TATE, Judge (concurring especially).
For the benefit of the higher reviewing court, the writer wishes to express these views, which might not be as appropriate in his opinion for the entire court.
The majority opinion by the writer expresses the present jurisprudential views as expressed by intermediate appellate court opinions, including those of the present court. Our Supreme Court has not yet had the opportunity to consider the issue by a full opinion or to evaluate the soundness or fairness of the rule applied.
In the light of modern traffic conditions and our crowded and urbanized society, and in the light of more recent legislation, certainly the better rule (and quite possibly the legislatively-intended rule) would be instead to apply a strict liability against owners who permit vehicles with defective brakeshighly dangerous instrumentalities, whether the defects are latent or notto be operated on the highways and to do harm to innocent persons lawfully on or near the highway.
Basically, in finding that the innocent injured person cannot recover from the owner-operator of such a dangerous instrumentality, unless he is negligent, we are holding that "fault" under Civil Code Article 2315 must be proved. We overlook that the application of other legislation may require a stricter degree of liability on the part of the owner of such an abnormally dangerous thing as a powerful motor vehicle with brakes that fail.
By LSA-R.S. 32:341, subd. A (1962) our legislature has provided that every motor vehicle "shall be equipped with brakes adequate to control the movement of and to stop and hold such vehicle, including two separate means of applying the brakes, each of which shall be effective to apply the brakes to at least two wheels." This statutory duty, under its terms, is mandatory; it does not, applied literally at least, admit of an avoidance by attempted but unsuccessful compliance.
Admittedly, the present rule in most other American jurisdictions is only that a failure of brakes to stop the car in a safe and efficient manner is, despite being a violation of a brake statute, nevertheless not ground for tort liability, in the absence of negligence in failing to inspect and maintain the brakes in a reasonable manner. Blashfield, Automobile Law and Practice, Sections 107.6, 107.7 (1965). See, e.g., Peters v. Rieck, 257 Iowa 12, 131 N.W.2d 529, 534 (1964). However, there is a growing body of dissent from this rule.
Several states now hold the owner of a car with defective brakes to a strict liability for injuries thereby occasioned, regardless of personal negligence, reasoning that the legislative requirement is mandatory that under no circumstances should an automobile be operated on a state highway without safe brakes. Sax v. Kopelman, *157 96 Ariz. 394, 396 P.2d 17 (1964); Turner v. Scanlon, 146 Conn. 149, 148 A.2d 334 (1959) (violation of safety equipment statute is negligence as a matter of law), followed by Hamill v. Smith, 25 Conn. Sup. 183, 199 A.2d 343 (1964); Spalding v. Waxler, 2 Ohio St.2d 1, 205 N.E.2d 890 (1965), followed by, inter alia, Stump v. Phillians, 2 Ohio St.2d 209, 207 N.E.2d 762 (1965)[1]. See also: Nettleton v. James, 212 Or. 375, 319 P.2d 879 (1958), overruled however by McConnell v. Herron, 240 Or. 486, 402 P.2d 726 (1965); dissents of Justices Foster and Finley in Foote v. Grant, 55 Wash.2d 797, 350 P.2d 870 (1960). See also: Danker, Brake Failure as Negligence Per Se, 16 Cleveland-Marshall L. Rev. 131 (1967).
In reaching the conclusion that strict liability should apply, the rationale is available that an owner is presumed as a matter of law to know of his defective brakes, because of his statutory duty not to operate a vehicle without proper brakes, Ferran v. Jacquez, 68 N.M. 367, 362 P.2d 519 (1961), or, again, that one who engages in abnormally dangerous activities (such as operating a car without effective brakes) is held to strict liability for damages thereby occasioned, Prosser on Torts, Section 77 (1964), cf. Woods v. Goodson, 55 Wash. 2d 687, 349 P.2d 731 (1960).
We should also note that Louisiana Civil Code Article 2317 provides that one is responsible for the damages occasioned by "the things we have in our custody". This Code article is identical to Article 1384(1) of the French Civil Code, its ancestor provision. Modern French judicial interpretations, commencing in the 1920's and 1930's with the motorizing of society, have under this article accorded strict liability to the owner-operator (or other custodian) for damages caused by vehicle defects. Tunc, The Twentieth Century Development and Function of the Law of Torts in France, 141 Int'l. and Comp.L.Q. 1089, esp. 1094-97, 1101 (1965); Deak, Automobile Accidents: A Comparative Study of the Law of Liability in Europe, 79 U. of Pa.L.Rev. 271, 279-95 (1930); von Mehren, The Civil Law System 388-91 (Prentice-Hall; 1957); Mazeaud, Traite Theorique et Practique de la Responsabilite Civile, Tome II, Sections 1228 (p. 235), 1260 (p. 259), 1599-1608 (pp. 598 et seq) (5th ed., 1958). Professor Tunc summarizes the interpretations as follows: "* * * the custodian of the thing can be discharged only to the extent to which the damage was caused by an external circumstance: if, on the other hand, the damage was the result of a defect in the thing, he will not be discharged, even though he could not have known of the defect." Tunc, cited above, at p. 1096. See also Planiol, Civil Law Treatise, Volume 2, Sections 929, 930, 931(1), (2) (5), and (7) LSLI 1959 translation).
It seems to me that the courts are faced with a choice between two legislative policies and, as is so often the case, the legislature has delegated to the courts the responsibility to apply these two policies in individual instances in accordance with the wisest rulesubject, as always and properly, to legislative supremacy and revision.
The two policies are: (a) the general rule of tort liability that, in the absence of fault, a doer is not responsible for the effects of his acts, Civil Code Artcle 2315; as opposed to (b), the legislative highway policy mandatorily requiring vehicles to be equipped with proper brakes and allowing of no exception, cf. LSA-R.S. 32:341, thus reasonably implying that the courts may hold a violator of this legislative policy to be negligent per se and strictly liable for damages caused by his violation.
Heretofore, the intermediate appellate courts of Louisiana have fashioned from *158 these conflicting policies the rule that the owner-operator of the defective-brakes vehicle is not civilly liable in the absence of fault. Although many other states have in the past reached similar conclusions, a growing number of jurisdictions feel that the rule thus fashioned is no longer a satisfactory adjustment of the conflicting legislative policies and of the increasing legislative concern for safe highways on the crowded highways of today and for sensible allocation of liabilities for injuries produced as a result of the congested and high-speed traffic of this motorized age.
As our brothers of the Georgia appellate court stated in Cruse v. Taylor, 89 Ga.App. 611, 80 S.E.2d 704, 708 (1954): "One obvious criticism of the rule is that it enables the unscrupulous to fabricate a defense. Another is that it relieves the operator of a burden incident to the normal operation of his car and places it upon an innocent person who happened to be unfortunate enough to be within the sweep of the vehicle. We think the statute should be construed to make it an act of negligence per se to operate a vehicle on a public thoroughfare without the proper brakes."
The writer may add that until Delahoussaye v. State Farm Mut. Auto. Ins. Co., 202 So.2d 287 (La.App.4th Cir., 1967) and Dore v. Hartford Accident & Indemnity Co., 180 So.2d 434 (La.App.3d Cir., 1965) (in which the writer dissented), the more stringent rule applied in this case did not actually deny compensation to innocent persons injured through the vehicle defect: For the courts applied the rule with such exceptions and upon such condition as, in practice, to allow compensation to the innocently injured, while paying lip-service to the rule which denied it in principle. In deference to the majority holding in Dore (or until such time as a majority of this court concludes otherwise), however, the writer concurs rather than dissents.

On Application for Rehearing.
En Banc. Rehearing Denied.
NOTES
[1] Not included are cases such as Wheeler v. Rabine, 15 A.D.2d 407, 224 N.Y.S.2d 483 (1962), where the majority rule is enunciated but where as a matter of fact prior vehicle-inspections are held not sufficient exercise of care as to exculpate for the sudden failure of brakes.